ISAAC F. DOBSON *vs.* L. S. JORDAN & another.

Suffolk.   Nov. 16, 1877. — June 29, 1878.   COLT & AMES, JJ., absent.

An agent of an insurance company, who, on delivering a policy of fire insurance to a broker, receives a check from him for the premium, and agrees not to send the check to the company, until it can be ascertained whether the policy is satisfactory to the broker's principal, is liable for breach of such agreement, although he receives nothing for his services in the transaction, and the broker, on ascertaining that the policy is not satisfactory, does not tender the policy back.

CONTRACT against L. S. Jordan and A. S. Lovett, for breach of an agreement not to deliver a bank check to the payee until the happening of a certain event, with a count in tort for the conversion of the check, alleged to be for the same cause of action. Trial in the Superior Court, before *Wilkinson*, J., who allowed a bill of exceptions in substance as follows :

In June, 1876, the plaintiff, an insurance broker, opened negotiations with the Commercial Insurance Company of New York, for a policy of insurance against fire on the property of the Fitchburg Railroad Company. The premium was agreed to be $551, and the plaintiff was to have fifteen per cent. brokerage. The plaintiff was at that time the attorney to accept service for the Commercial Insurance Company, which was domiciled in this Commonwealth. The defendants were in June, 1876, and since, the general agents of the Commercial Insurance Company.

On June 29, 1876, the Commercial Insurance Company sent the policy to the defendants, with instructions not to deliver it to the plaintiff until the premium had been paid in cash or in a cashier's check. The defendants had no part in the business other than to carry out these instructions, and received no compensation either from the company, the plaintiff, or any other person.

The defendants sent the policy at once by their bookkeeper, to the plaintiff, with instructions not to deliver it, except upon payment of the premium in cash or a cashier's check. It was in evidence that the bookkeeper's authority was limited to the delivery of the policy and the collection of the premium. The plaintiff met the bookkeeper on June 29, 1876, in the forenoon, at a bank in Boston, and procured a cashier's check on New

York for the amount of the premium, less his commission, pay‑ able to the order of the Commercial Insurance Company, and delivered it to the bookkeeper and received from him the policy. It was contended, on the part of the plaintiff, that at this inter‑ view he told the bookkeeper to hold the check until the policy was ascertained to be correct; but, on this point, the evidence was conflicting. The plaintiff took the policy away and in the afternoon of the same day called upon the defendants at their office, but did not bring the policy nor offer to give it to them. The plaintiff said that the policy was not satisfactory to the Fitchburg Railroad Company, and asked the defendant Lovett to hold on to the check until the policy could be corrected. The check, in the ordinary course of business, would have been sent to New York that evening. Lovett said he would hold on to it. The policy differed from a policy issued the year before by the same company to the Fitchburg Railroad Company, and there was evidence that it differed from the terms of the application, and was never accepted by the Fitchburg Railroad Company, and never altered by the Commercial Insurance Company to conform to the agreement, and was cancelled in September, 1876, never having been in force. No reference was made by the plaintiff to his interview with the bookkeeper in the fore‑ noon, and the evidence was conflicting as to the defendants' knowledge of the conversation between the plaintiff and the bookkeeper. The next day, in the forenoon, a special agent of the Commercial Insurance Company called upon the defendants in Boston, exhibited a power to collect for the company all pre‑ miums and moneys, and demanded this check, among other col‑ lections ; and the defendants delivered the check. The defend‑ ants never asked for the policy ; and the plaintiff never returned it or tendered it. There was evidence tending to show that one of the defendants sent a corrected policy to the Commercial In‑ surance Company to conform to the application ; but the Com‑ mercial Insurance Company declined to make corrections or to pay back the money. There was also evidence tending to show that the plaintiff demanded the check, after he found that it had been forwarded by the special agent and that the Commercial Insurance Company had refused to make any alterations. The defendants put in evidence tending to show that at the time of

these events the plaintiff owed the Commercial Insurance Company $1000 or more. The plaintiff denied that any debt existed.

The defendants asked the judge to instruct the jury that if the defendants were general agents of the Commercial Insurance Company, then the leaving of the check with the defendants was an absolute payment to the Commercial Insurance Company, and no agreement subsequently made with the defendants could alter the rights of the parties ; that if the defendants were acting under a special authority from the Commercial Insurance Company, then they could not legally go beyond the scope of that special authority ; that if such special authority existed, and the defendants, having made the alleged promise to the plaintiff, were on the next day required by the attorney of the company to deliver up the check, the defendants were bound to deliver up the check when demanded, and could not legally retain the same for the plaintiff ; that if the plaintiff did not tender back the policy to the defendants, he could not maintain this action ; and that, if the jury found that the alleged promise made by the defendants was not within the scope of their authority as agents for the Commercial Insurance Company, or if they found that the plaintiff knew or had reason to know that such a promise was in excess and in violation of their authority as such agents, then the plaintiff could not maintain his action against the defendants upon the evidence.

The judge did not specifically give either of the instructions requested, but instructed the jury that if the plaintiff delivered the check to the defendants' agent, with directions to retain it till the plaintiff could ascertain whether the railroad company would accept the policy, and this condition was communicated to the defendants, and assented to by them, and they agreed to so retain it, and the railroad company rightfully refused to accept the policy, because it did not conform to the application, and this refusal was forthwith communicated to the defendants, and they agreed still to retain the check till corrections could be made in the policy, and the defendants the next morning, in violation of these agreements, gave up the check to the agent of the insurance company, to the injury of the plaintiff, he might recover in this action ; but unless the jury were satisfied that

the several propositions above stated were proved, their verdict should be for the defendants.

The jury found for the plaintiff; and the defendants alleged exceptions.

*J. P. Treadwell*, for the defendants.

*G. W. Morse*, for the plaintiff.

LORD, J. The argument of the defendants' counsel is based wholly upon the assumption that the defendants were simply the agents of the Commercial Insurance Company of New York, and that their engagements were entered into in behalf of said company, and in no respect were personal engagements. The plaintiff, however, makes no claim upon any contract made by the defendants in behalf of such company. On the other hand he contends that the contract of the defendants was a personal contract with him, and a personal engagement not to deliver the check to the Commercial Insurance Company until the happening of a certain event; that they personally agreed with him that they would so retain the check and not deliver it, and that, in violation of their personal agreement with him, they did deliver it; that such delivery was not only in violation of his rights, but that there was no right in the insurance company to have the check, or the amount of it from the Fitchburg Railroad Company, in whose behalf the plaintiff was acting, and by whom the payment of the amount of the check was to be made.

The court instructed the jury that "if the plaintiff delivered the check to the defendants' agent, with directions to retain it till the plaintiff could ascertain whether the railroad company would accept the policy, and this condition was communicated to the defendants, and assented to by them, and they agreed to so retain it, and the railroad company rightfully refused to accept the policy, because it did not conform to the application, and this refusal was forthwith communicated to the defendants, and they agreed still to retain the check till corrections could be made in the policy, and the defendants the next morning, in violation of these agreements, gave up the check to the agent of the insurance company, to the injury of the plaintiff, he might recover in this action; but unless the jury were satisfied that the several propositions above stated were proved, their verdict should be for the defendants."

Certainly these instructions were quite sufficiently favorable to the defendants. If in reality the plaintiff had owed the insurance company the amount of this check, (which was not admitted but denied, and which could not be tried in this action,) and the check had been his own property, (which also does not appear,) the defendants would have had no right against his prohibition to have paid it to the company. The fact that the defendants had but a limited authority to act for the insurance company is important only in relation to contracts in which they acted in behalf of such company, and can have no effect upon any contract which in their own behalf they personally entered into. However competent it might be, as bearing upon the probability of the correctness of the plaintiff's claim, it is certainly unimportant, if the plaintiff established to the satisfaction of the jury all the facts which the presiding judge ruled that it was necessary for him to establish, in order to entitle him to a verdict.                              *Exceptions overruled.*